## WILKOFF CO. v. ROYAL GOVERNMENT OF ITALY.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1924. Rehearing Denied October 7, 1924.)

No. 4021.

1. Trover and conversion ⬤⟲40(3)—Evidence held insufficient to support plaintiff's claim of title as purchaser.

In an action for conversion of scrap steel, in which plaintiff claimed title and ownership by reason of inspection and approval under contract to purchase from third person, evidence *held* insufficient to establish such title.

2. Estoppel ⬤⟲87—Statements not acted on held not to create estoppel.

Statements made by officers of defendant corporation to an inspector for plaintiff, with whom defendant had no contract relation, *held* not to create an estoppel to deny plaintiff's title to property under contract with third person, where they were not communicated to nor acted on by plaintiff.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action at law by the Royal Government of Italy, by Francesco Quattrone, Commissioner General and Minister Plenipotentiary of His Majesty, the King of Italy, in the United States, against the Wilkoff Company. Judgment for plaintiff, and defendant brings error. Reversed.

Newton D. Baker, of Cleveland, Ohio, and Union C. De Ford, of Youngstown, Ohio (Harrington, De Ford, Huxley & Smith, of Youngstown, Ohio, on the brief), for plaintiff in error.

H. J. Crawford, of Cleveland, Ohio, and Edward W. McMahon, of New York City (Graham, McMahon, Buell & Knox, of New York City, and Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

MACK, Circuit Judge. Writ of error to reverse a judgment on verdict for $157,-600 for the conversion of 4,000 tons of heavy melting steel scrap.

In January, 1917, a contract was entered into between Wilkoff & Vaughn Company, Inc., a New York corporation, and the royal Italian government, acting for the account of the Societa Italiana Ernesto Breda, for the sale by the former to the latter of 25,-000 tons of heavy melting steel scrap. On the 21st day of February, 1917, Wilkoff & Vaughn Company, Inc., made out an invoice for 4,000 gross tons of heavy melting steel scrap, to be shipped to Philadelphia, on 20 days' notice of vessel, March and April, 1917; price $29.75 per gross ton, with freight prepaid to Philadelphia, $119,-000, less 25 per cent. to be paid on presentation of railroad bills of lading, railroad weight and inspector's certificate, $29,-750; amount now to be paid against this invoice, $89,250. On March 6, 1917, a document, called a bill of delivery, was executed on behalf of Wilkoff & Vaughn Company, Inc., by B. C. Vaughn, its vice president, certifying that there had been delivered to the royal Italian government 4,000 tons of heavy melting steel scrap, being a part of the 25,000 tons sold under the agreement of January 24, 1917, "and that by this present title the ownership of said four thousand (4,000) tons heavy melting steel scraps referred to has passed to the said royal Italian government for the account of the Societa Italiana Ernesto Breda, togeth-

er with all the rights of possession thereto"; that delivery of the material was thereby made upon the premises of the Wilkoff Company (an Ohio corporation), Youngstown, Ohio, and that the material would be delivered at the port of Philadelphia in accordance with the terms of the January agreement. It further recited that Wilkoff & Vaughn Company, Inc., had the right to substitute and ship other similar material from other points, if they so desired, and that all material would be accepted under inspection conditions as per contract referred to.

Attached to the bill of delivery was an affidavit by B. C. Vaughn, and a bond without sureties of the Wilkoff & Vaughn Company, Inc., in the sum of $119,000, conditioned upon Wilkoff & Vaughn Company, Inc., its successors and assigns, delivering to the Italian government the 4,000 tons of steel scrap pursuant to the terms and conditions of the contract of January 24, 1917, at such times and places as might thereafter be agreed upon. On March 10, 1917, on the above-mentioned bill of delivery, bond, and invoice, the Guaranty Trust Company of New York, with whom the royal Italian government had opened an irrevocable letter of credit in favor of Wilkoff & Vaughn Company, Inc., for the performance of the contract of January 24, 1917, issued its draft for $119,000, payable to the order of Wilkoff & Vaughn Company, Inc., which corporation had previously furnished its bond in the sum of $250,000 for the faithful performance of the contract of January 24, 1917.

On March 8, 1917, one Gannon, an employé of Hildreth & Co., of New York, came to the office of the Wilkoff & Vaughn Company, pursuant to telegraphic instructions, to inspect 4,000 tons of heavy melting steel. While not advised for whom the inspection was to be made, he assumed that it was for the Italian government, as he was taking care of their work at the time. He was shown about the yard by Mr. Isaac Wilkoff, the secretary of the Wilkoff Company. He looked at several piles, and indicated that the steel in a couple of the piles would be satisfactory if the material was cut to charging box size and care was taken to see that no malleable iron was included. He testifies that he was told that "this would be the material that would be shipped on that contract," and that the two piles contained about 4,000 tons; that after inspecting the steel they went to the office of William Wilkoff (who at that time was president of both Wilkoff & Vaughn Company, Inc., and the Wilkoff Company), and there he dictated a telegram to the effect that the heavy melting steel the Wilkoff Company prepared or proposed to furnish the Italian order was satisfactory. He also testified on redirect examination, in reply to a leading question, that William Wilkoff told him that the steel in question "was being held for the Italian government"; "that it was there on account of the Italian government."

Isaac Wilkoff and other witnesses for the defendant testified that William Wilkoff was not in Youngstown on March 8, 1917, and was not seen by Gannon; that when Gannon asked for William Wilkoff, who was not in, he was taken to a Mr. Brown, an employé of the Wilkoff Company, and later turned over by Brown to Isaac Wilkoff. Evidence was also introduced that William Wilkoff's name was registered in a New York hotel late in the afternoon of March 7th. Isaac Wilkoff testified that William Wilkoff had instructed him as to what to do; further, that he assumed that the scrap was being inspected for the Italian government. A letter was introduced, testified to have been written on and dated March 8, 1917, by the Wilkoff Company to Wilkoff & Vaughn Company, Inc., New York, "attention Mr. William Wilkoff," telling that Gannon, who was designated chief inspector, had reported and had been shown the material that "we proposed to furnish on the export order as heavy melting steel," and that Gannon had telegraphed his New York office, "Heavy melting steel the Wilkoff Company propose to furnish on Italian order is satisfactory." William Wilkoff himself did not testify in the case.

Nothing further seems to have occurred between the parties until August 14, 1918, when the Italian Military Mission telegraphed the Wilkoff Company that they had instructed Lieut. Necri to reinspect the 4,000 tons of steel scrap stored with the Wilkoff Company for their account. In reply the Wilkoff Company wired, on August 15, 1918, "All of this scrap was shipped out of our yard to take care of the steel mills on our own orders early in nineteen eighteen." A letter dated August 19th explained that the government had issued instructions that no scrap be held in the yard of any scrap dealer for any reason whatever.

[1] In this action the burden is upon the plaintiff to establish its immediate right to possession of the property in question at

the time of the alleged conversion. Exclusion of evidence tending to show title in defendant was not reversible error, inasmuch as there was no contention that the steel had not originally belonged to defendant. To sustain its claim to right of possession based upon ownership, it was incumbent upon plaintiff to prove either the fact itself or the elements essential to estop defendant from denying the fact that Wilkoff & Vaughn Company, Inc., had acquired from the defendant the title transferred to plaintiff, or that it was authorized, as defendant's agent, to transfer defendant's title. For in our judgment the bill of delivery vested whatever title Wilkoff & Vaughn Company, Inc., had, or was empowered to convey, in and to the 4,000 tons, subject only to certain conditions subsequent.

On none of the theories of title is the statute of frauds relevant, inasmuch as the agreement between plaintiff and Wilkoff & Vaughn Company, Inc., was in writing. Furthermore the record discloses no evidence of intercorporate relations between the two companies other than the single fact that William Wilkoff was president of each of them.

The first question then is, in view of defendant's motion for a directed verdict, whether or not the evidence justified a submission of the issue of plaintiff's title, whether in fact or by estoppel, to the jury. While it is not at all clear from this record on which theory the plaintiff was endeavoring to maintain its claim, it is clear that in this action it must establish title in itself, at least as against this defendant. That defendant knew of the contract with Wilkoff & Vaughn Company, Inc., and that it understood that the latter intended to appropriate defendant's property thereto, will not suffice. The evidence must establish that plaintiff had acquired, not merely as against Wilkoff & Vaughn Company, Inc., but also as against defendant, the immediate right of possession. If there were any contractual relations between the companies in reference to this material, they were not shown; for, in our judgment, the statements hereinabove recited are insufficient to justify the submission to the jury of the issue either of title or of agency in Wilkoff & Vaughn Company, Inc. Furthermore, defendant's failure specifically to deny plaintiff's statement in the telegram of August 14, 1918, 18 months after the transaction, that the scrap was stored with defendant for plaintiff's account, is, in our judgment, an insufficient basis in the circumstances to permit a finding that in some undisclosed way defendant had lost and plaintiff had acquired the title thereto.

[2] We come, then, to the claim of estoppel. As to representation of title or agency in Wilkoff & Vaughn Company, Inc., or of title in plaintiff, the only evidence is that of the statements alleged to have been made by William and Isaac Wilkoff to Inspector Gannon. Assuming that it was William Wilkoff, defendant's president, who first talked with Gannon at defendant's yards, and that Isaac Wilkoff was authorized to or could estop defendant by his statements, nevertheless the essential element of reliance thereon to plaintiff's detriment is missing. Gannon was merely an inspector of the quality and character of the goods; in no other way did he represent plaintiff. There is no evidence that he communicated these alleged representations to anyone; his telegram to plaintiff gives no hint that title had or was intended to have passed from defendant. Furthermore there is no evidence that the bank in making the payment, or plaintiff in authorizing it, either had knowledge of or in any way acted in reliance upon any representation by defendant. Wilkoff & Vaughn Company, Inc., had given its bond at the time of the agreement; it gave the new bond at the time of payment. On these, and on the so-called bill of delivery, plaintiff apparently relied and acted.

It may well be that if, on a new trial, William Wilkoff is produced as a witness on either side, the situation may be clarified. On this record, however, the court erred in denying defendant's motion for an instructed verdict.

Reversed and remanded.